IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 27, 2022

**DARYL J. CARTER v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Bledsoe County**
**No. 2013-CR-2      J. Curtis Smith, Judge**

_____

**No. E2021-00669-CCA-R3-PC**

_____

Daryl J. Carter, Petitioner, appeals the denial of his petition for post-conviction relief, alleging ineffective assistance of trial counsel.  After thorough review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and J. ROSS DYER, JJ., joined.

Theodore A. Engel III, Chattanooga, Tennessee, for the appellant, Daryl J. Carter.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Senior Assistant Attorney General; Mike Taylor, District Attorney General; and James W. Pope III, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On April 20, 2005, Petitioner confessed to digitally penetrating his two-year-old stepdaughter, the victim, in January of the same year. *State v. Daryl J. Carter*, No. E2010-01193-CCA-R3CD, 2012 WL 460459, at *3 (Tenn. Crim. App. Feb. 14, 2012), *no perm. app. filed*.  On July 25, 2005, a Bledsoe County grand jury indicted Petitioner with one count of rape of a child. *Id.* at *1.  Petitioner sought to suppress his confession. *Id.* After multiple hearings, the court overruled Petitioner's motion to suppress and the matter proceeded to trial. *Id*. at *9.

The facts at trial established that on the evening of January 10, 2005, Petitioner and the victim's mother took the victim to the hospital because of bruising to her ears and to her arm and bleeding in her vaginal area. *Id.* at *15. Two doctors and a nurse treated the victim's injuries at the hospital. *Id.* at *27. The two doctors and nurse testified as expert witnesses and specified that the victim's injuries occurred within the preceding 24 hours of their examination of the victim. *Id.* at *17-19. The testimony of the victim's mother and the victim's aunt established, through circumstantial evidence, that Petitioner was the only individual left alone with the victim during the period when her injuries must have occurred. *Id.* at *13-14, 28. At the conclusion of the trial, Petitioner was convicted as charged. *Id.* at *25. Petitioner received a sentence of 18 years and six months. *Id.* at *25. A panel of this Court affirmed the trial court's denial of Petitioner's motion to suppress his confession, the trial court's limitation of Petitioner's cross-examination of his ex-wife, and the sufficiency of the evidence supporting Petitioner's conviction. *Id.* at *33.

Petitioner filed a pro se petition for post-conviction relief raising claims of due process violations, improper sentencing, and ineffective assistance of counsel. The post-conviction court appointed counsel. Through counsel, Petitioner filed an amended petition for post-conviction relief. The amended petition narrowed Petitioner's claims and alleged only that trial counsel was ineffective for failing (1) to adequately investigate "alternate possible culprits," (2) to object to the destruction of a photograph depicting a vaginal swab and spermatozoa cells, and (3) to invoke the criminal savings statute during the sentencing hearing. The post-conviction court held a hearing on the petition.

Petitioner testified that trial counsel only met with him "three or four times maybe, in the course of roughly two years[.]" Petitioner said that prior to trial, he told trial counsel to investigate his ex-mother-in-law because she acted strange on the night the victim went to the hospital and she made comments "that just didn't sit right with [Petitioner]." Petitioner agreed that he told trial counsel this information to pursue a theory of an alternative suspect. Petitioner recalled that during trial there was perhaps mention of an "alternate perpetrator," but it was only a "speculative conversation." Petitioner testified that the timeframe for when the crime was committed was "thrown in the air" based on "the so[-]called DNA" evidence and the medical experts' testimony. Petitioner agreed that trial counsel did not call specific witnesses to develop the alternative suspect theory.

On cross-examination, Petitioner claimed that if trial counsel had met with him more frequently, trial counsel could have "expounded upon to [Petitioner], how serious this is[.]" Petitioner confirmed that trial counsel hired an expert to counter the State's proof of DNA evidence. When asked whether Petitioner thought his ex-mother-in-law was a suspect, he clarified that he only thought "she knew something about it[.]"

Petitioner said that his ex-mother-in-law was now deceased and that he was unsure what information she had known regarding an alternative suspect. Petitioner testified, "I don't have any specific suspects. I don't have any names. What I know is that I didn't do it." Petitioner recalled "there was a phone call made and comments made later [] about seeing some things happen and that's where the alternate suspect came in at trial." In response to whether Petitioner had proof to show that any other person injured the victim, he replied, "I don't have any physical proof of that."

Trial counsel testified that he had served as the District Public Defender since 2011 and worked as an assistant public defender since 1992. Prior to his career as a public defender, trial counsel practiced criminal law for six years in private practice. Trial counsel estimated that he had tried over 200 criminal cases, several of those cases involving the rape of a child.

Trial counsel testified that during his representation of Petitioner, they met numerous times. He did not believe additional meetings would have helped Petitioner's case. Trial counsel did not recall Petitioner's ex-mother-in-law having any relevant information. He testified that he reviewed his notes, which did not reflect any information the ex-mother-in-law may have had to help Petitioner.

Trial counsel testified that Petitioner's case began as a civil matter. In preparation for trial, counsel reviewed all of Petitioner's civil attorney's case notes, doctor depositions, and interviews with the Department of Children's Services ("DCS") employees. Trial counsel also secured funding for an expert to counter the State's DNA evidence. The expert testified at trial that the Tennessee Bureau of Investigation ("TBI") agent who examined a vaginal swab from the victim may have misidentified the six cells found on the swab. The expert explained that yeast cells were often mistaken for spermatozoa cells. Trial counsel also spoke with DCS employees, individuals Petitioner knew from the National Guard, and Petitioner's aunt. Trial counsel attempted to reach Petitioner's ex-wife, but she would not speak with him.

Trial counsel confirmed that at trial, medical experts established a timeframe for when the victim's injuries occurred and that Petitioner was alone with the victim during that timeframe. Trial counsel explored alternative suspects and followed a lead regarding Petitioner's stepfather being a sex offender, but the stepfather was not around the victim on the day in question. Trial counsel recalled that Petitioner admitted to "penetrating t[he victim] with a finger" and that they tried to suppress the statement but were unsuccessful.

Trial counsel confirmed that the TBI agent who examined the vaginal swab sent the DNA evidence to a private laboratory and stated that the laboratory "used it all up"

while trying to extract DNA.  Trial counsel said that he "hammered" on the fact that the State was unable to connect the DNA evidence to Petitioner.

Trial counsel recalled that at Petitioner's sentencing hearing, all of the parties believed the "old" sentencing law applied.  Trial counsel testified that he did not raise any sentencing issues on direct appeal because he believed Petitioner "had done well at sentencing."  Trial counsel agreed that if the trial court had sentenced Petitioner under the "new" sentencing law, it could have applied several enhancement factors.  Trial counsel said that he thought Petitioner would have done much worse if the court had applied enhancement factors.

On cross-examination, trial counsel agreed that the "potential detection of spermatozoa" was a significant issue at trial.  Trial counsel agreed that the defense expert could not personally view the DNA evidence because the TBI used it all during its testing.  Trial counsel confirmed that he did not challenge the destruction of the DNA evidence.

The post-conviction court entered a written order denying post-conviction relief on May 24, 2021.  The court specifically credited trial counsel's testimony and discredited Petitioner's testimony.  The post-conviction court concluded that trial counsel was not deficient and that Petitioner was not prejudiced in any respect.  Petitioner appeals.

*Analysis*

Petitioner argues that the post-conviction court improperly denied post-conviction relief because trial counsel was ineffective for failing to properly investigate alternative suspects, for failing "to object to the destruction of material evidence," and for failing to invoke the criminal savings statute at Petitioner's sentencing hearing.  The State responds that the post-conviction court properly denied post-conviction relief because trial counsel's representation was effective.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States."  T.C.A. § 40-30-103.  In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence.  T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999).  "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).  On appeal, a post-conviction court's findings of fact are conclusive unless the evidence preponderates otherwise.  *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006).  Accordingly, questions

concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court, and an appellate court may not substitute its own inferences for those drawn by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two-prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors,

the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694).

In evaluating an attorney's performance, this Court "must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462 (citing *Strickland*, 466 U.S. at 689). In addition, this Court must avoid the "distorting effects of hindsight" and must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Id.* at 688-89. However, "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting *Goad*, 938 S.W.2d at 369).

Petitioner complains that trial counsel was ineffective for failing to adequately investigate alternative suspects and "pursue alternate theories for how this assault could have occurred." However, Petitioner admitted that he did not know the names of any potential suspects or have any physical proof of alternate perpetrators. Petitioner merely offered vague references to his deceased ex-mother-in-law's knowing "something about [an alternative suspect]", a phone call, "comments made later on about seeing some things happen," and children "playing doctor." Trial counsel, whose testimony was credited by the post-conviction court, testified that he pursued the alternative suspect theory and explored a lead regarding Petitioner's stepfather. However, the proof at trial established that no one other than Petitioner was left alone with the victim during the timeframe for when the injury occurred. Petitioner has failed to meet his burden and is not entitled to relief.

Petitioner claims trial counsel was ineffective for failing "to object to the destruction of material evidence." Citing *State v. Ferguson*, 2 S.W.3d 912, 914 (Tenn. 1999), Petitioner dives into a *Ferguson* analysis, arguing that the State had a duty to preserve certain "material" evidence that was destroyed during testing. He contends that trial counsel should have filed a motion to dismiss the case or to exclude testimony regarding DNA evidence.

This Court noted in Petitioner's direct appeal that, "no evidence concerning semen or spermatozoa is necessary to support [Petitioner's] conviction of rape of a child" because Tennessee Code Annotated section 39-13-501(7) merely requires penetration by "any object[.]" Petitioner confessed to digitally penetrating the victim and strong

- 6 -

circumstantial evidence placed him as the only individual alone with the victim during the timeframe when the injury could have occurred.

The post-conviction court concluded that trial counsel was not ineffective because the destroyed evidence did not incriminate Petitioner, was fully explored at trial through the testimonies of the TBI agent and the defense expert, and was not relied upon to sustain Petitioner's conviction on direct appeal. Trial counsel cross-examined the TBI agent and hired an expert to counter the State's proof. Petitioner has failed to show prejudice or deficiency and is not entitled to relief.

Petitioner alleges trial counsel was ineffective for failing to invoke the criminal savings statute at his sentencing hearing. Tennessee Code Annotated section 39-11-112, the criminal savings statute, addresses "Repealed or amended statutes; prosecution" and states:

> When a penal statute or penal legislative act of the state is repealed or amended by a subsequent legislative act, the offense, as defined by the statute or act being repealed or amended, committed while the statute or act was in full force and effect shall be prosecuted under the act or statute in effect at the time of the commission of the offense. Except as provided under § 40-35-117, in the event the subsequent act provides for a lesser penalty, any punishment imposed shall be in accordance with the subsequent act.

At the time of the offense, Tennessee Code Annotated section 39-13-522, Rape of a child, only defined the offense and its class. T.C.A. § 39-13-522 (2005). Before Petitioner's sentencing hearing, the Tennessee Legislature amended Tennessee Code Annotated section 39-13-522. T.C.A. § 39-13-522 (2007). The Legislature added subsection (2)(A) which stated, "Notwithstanding title 40, chapter 35, a person convicted of a first or subsequent violation of this section shall be punished by a minimum period of imprisonment of twenty-five (25) years. The sentence imposed upon any such person may, if appropriate, exceed twenty-five (25) years, but in no case shall it be less than a minimum period of twenty-five (25) years. T.C.A. § 39-13-522(2)(A) (2007).

It is clear that the criminal savings statute does not apply here because the subsequent 2007 act provided for a greater penalty than the 2005 act did prior to its amendment. Trial counsel, much to Petitioner's benefit, requested the court to use the law in effect at the time of the offense and thereby secured a lesser sentence for Petitioner. The post-conviction court found trial counsel's strategy reasonable and we agree. Petitioner has failed to establish prejudice and is not entitled to relief.

*Conclusion*

Based on the foregoing, we affirm the judgment of the post-conviction court.

_____
TIMOTHY L. EASTER, JUDGE